# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-00675-SCT

*DAVID ADAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/1999 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS H. COMER, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | JOHN R. YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/19/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/9/2000 |

**BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This is an appeal from the Circuit Court of Prentiss County where David Adams ("Adams") was convicted of the capital rape, fondling, and attempted sexual battery of his twelve-year-old daughter. As a habitual offender with three previous unrelated felony convictions, Adams was sentenced to life in prison without the possibility of parole for the capital rape charge. He was sentenced to ten years for the fondling, with the sentence to run consecutively. Adams was sentenced to thirty concurrent years for the conviction of attempted sexual battery, all sentences to be served in the custody of the Mississippi Department of Corrections.

## STATEMENT OF FACTS

¶2. On July 19, 1997, Adams took his twelve-year-old daughter into his bedroom where he ordered her to strip. He then fondled her and had sexual intercourse with her. Adams also attempted to enter her anally. Adams's two sons, ages six and eight, witnessed the incident by peeking through a keyhole in the door.

## STATEMENT OF ISSUES

### I. WHETHER THE TRIAL COURT ERRED IN REFUSING ADAMS'S REQUEST FOR

**A CONTINUANCE WHEN THE STATE DISCLOSED TO ADAMS A HIGHLY PREJUDICIAL LETTER ON THE FIRST DAY OF TRIAL.**

**II. WHETHER THE TRIAL COURT ERRED BY REFUSING TO GRANT ADAMS'S REQUESTED JURY INSTRUCTIONS AS TO LESSER INCLUDED OFFENSES.**

**III. WHETHER THE TRIAL COURT ERRED BY SENTENCING ADAMS TO LIFE IMPRISONMENT WHEN THE JURY DID NOT FIX SUCH SENTENCE.**

**IV. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO AMEND THE INDICTMENT AND CHARGE ADAMS AS A HABITUAL OFFENDER.**

**V. WHETHER THE TRIAL COURT ERRED BY OVERRULING ADAMS'S MOTION IN LIMINE AND OBJECTION TO THE INTRODUCTION OF THE APPELLANT'S PRIOR RECORD AND BY ALLOWING THE STATE TO USE ADAMS'S PRIOR RECORD AFTER AN INADEQUATE *PETERSON* DETERMINATION.**

## DISCUSSION OF LAW

**I. WHETHER THE TRIAL COURT ERRED IN REFUSING ADAMS'S REQUEST FOR A CONTINUANCE WHEN THE STATE DISCLOSED TO ADAMS A HIGHLY PREJUDICIAL LETTER ON THE FIRST DAY OF TRIAL.**

¶3. The trial in this matter was held on March 1-3, 1999. On March 1, 1999, Adams's ex-wife, Kellie Adams ("Kellie"), gave the State a letter that Adams had written to his daughter. The State immediately produced the letter to Adams's defense attorney. Adams's attorney read the letter in the presence of the State and, without objection, proceeded to participate in jury selection.

¶4. After the jury was selected, several motions were presented to the judge. At this time, Adams made a motion for a continuance, or in the alternative for exclusion of the letter, based upon "surprise" to Adams regarding the contents of the letter. The State argued that because Adams had written the letter, there could be no "surprise" to him regarding its contents. The State further argued that the motion was not timely, since Adams waited until the jury had been seated, thereby invoking "double jeopardy." The judge, however, ruled that the motion was timely made.

¶5. The judge held off ruling on the motion until March 2, 1999, when Kellie could be questioned by the court regarding the letter. After questioning Kellie, the judge ruled that there was no surprise to Adams because he wrote the letter. The judge also ruled that there was no discovery violation. As such, there would be no continuance, and the letter would be allowed into evidence.

¶6. Adams argues that the judge erred in not following the *Box* guidelines when the State presented Adams with an inculpatory letter written by him to his daughter. *Box v. State,* 437 So.2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring.) According to Adams, the State violated U.R.C.C.C. 9.04 by not producing the letter when requested by him. Among other things, Rule 9.04 provides that the defendant is entitled to disclosure of his written statements. U.R.C.C.C. 9.04(A)(2). Adams argues that this late discovery triggered an analysis of the *Box* guidelines, which the judge failed to follow. The State argues that because it turned over the letter to Adams immediately after being given the letter by Kellie, there was no discovery violation, and a *Box* analysis was not triggered.

¶7. In ***Box v. State***, 437 So.2d 19 (Miss. 1983), Justice James L. Robertson wrote a specially concurring opinion in which he expressed his concern **with the State failing to disclose discovered evidence to the defense**. *Id*. at 22. Further, Justice Robertson expressed concern that the majority in ***Box*** did not give trial judges clear guidelines to follow when the state "fail[s] to make discovery. . . ." *Id.* at 22-23. In his suggested guidelines, Justice Robertson suggests that the ***Box*** analysis is not triggered unless "the State seeks to offer into evidence that which it ought to have disclosed pursuant to a discovery request but didn't. . . ." *Id.* at 23.

¶8. The Court of Appeals recently stated that "[t]he *Box* analysis only applies when the State withholds inculpatory evidence and then attempts to introduce that inculpatory evidence at trial." ***[Johnson v. State](#)***, 760 So.2d 33, 36 (Miss. Ct. App. 2000). The language of [U.R.C.C.C. 9.04(I)](#) states:

> If during the course of trial, the prosecution attempts to introduce evidence **which has not been timely disclosed** to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
>
> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
>
> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the nondisclosed evidence or grant a mistrial.
>
> 3. The court shall not be required to grant either a continuance or mistrial **for such a discovery violation** if the prosecution withdraws its efforts to introduce such evidence.

[U.R.C.C.C. 9.04(I)](#) (emphasis added). By the very language of the rule, there must be a discovery violation in order to trigger the ***Box*** analysis.

¶9. Adams cites as support for his argument ***Robinson v. State***, 662 So.2d 1100 (Miss. 1995). In ***Robinson***, the prosecution produced a letter written by the defendant to the victim. *Id.* at 1102. In the letter, the defendant apologized and asked for forgiveness for his actions. *Id.* The prosecution received the letter the day before trial began and disclosed the letter to the defense. *Id.* The defense made no objection to the letter until the prosecution attempted to introduce the letter at trial. *Id.* at 1103.

¶10. The defense maintained, outside the presence of the jury, that the letter was "extremely prejudicial to his client and asked for a mistrial." *Id.* The judge denied the motion and simply "asked if the State was satisfied that the *Box* requirements had been met." *Id.* No further discussion was had regarding the ***Box*** requirements. The judge allowed the defense a short recess to examine the letter. *Id.* at 1104. This Court ruled that Robinson was allowed a "reasonable period of time in which to review the letter." *Id.*

¶11. Adams's reliance on ***Robinson*** is misplaced. This Court's ruling in ***Robinson*** undergirds the fact that the trial court was correct in its handling of the letter. In the case sub judice, the trial court declined to rule on the motion asking for a continuance until it could interview Kellie. This effectively gave the defense a continuance until the next day in which to review the letter. As this Court has said, "[t]here will no doubt be cases where postponement of a day or two, or in some cases even an hour or two, will suffice." *Id.* at 1104

(quoting *Stewart v. State*, 512 So.2d 889, 892-93 (Miss. 1987)). This Court went on to say that it could not say that Robinson had been ambushed or prejudiced by the letter because there was no indication that it would have made any difference to Robinson's defense if his attorney had known of the letter at an earlier time. *Id.*

¶12. This Court's reasoning in *Robinson* is clearly applicable to this case. The letter written by Adams was, in essence, a confession, as was the letter written by Robinson. Robinson was only given a short recess in which to review the letter, while Adams was given an overnight chance to review the letter. As was the case in *Robinson*, there is no indication that Adams's defense would have been helped or hindered by his defense attorney learning of the letter at an earlier time.

¶13. Adams also argues that a discovery violation did occur because Kellie, a prosecution witness, knew of the letter a year before trial. According to Adams, the prosecution was deemed to have known about the letter and should have disclosed it much earlier in discovery. Adams argues that "[f]or purposes of discovery and other matters in criminal prosecutions the State is considered a team consisting of various members including witnesses for the prosecution and other persons cooperating in the prosecution of the case. Box, 437 So.2d at 25 n.4." Justice Robertson, in the footnote in his concurring opinion in *Box*, cites to *United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973), for the proposition that prosecution witnesses are part of the prosecution team. *Box*, 437 So.2d at 25 n.4. However, closer review reveals that *Deutsch* merely stands for the proposition that the different "arms" of the government are not "severable entities" for the purposes of discovery. *Deutsch,* 475 F.2d at 57.

¶14. The State contends that Kellie could not be a prosecution team member for the purposes of imputing knowledge to the State regarding the inculpatory letter. In *King*, this Court stated that "a prosecutor is deemed to possess information in the hands of all members of the prosecutorial team, both investigative and prosecutorial personnel." *King v. State*, 656 So.2d 1168, 1176 (Miss. 1995). Kellie was not an investigative or prosecutorial member of the team. She is the mother of the victim and a prosecution witness.

¶15. This Court also said in *King* that "the requirement that the government possess the evidence can be satisfied if the evidence was in the possession of the prosecutor or anyone over whom the prosecutor had authority." *Id.* (quoting *United States v. Meros*, 866 F.2d 1304, 1309 (11th Cir. 1989)). While Kellie was a prosecution witness, it cannot be argued that the prosecutor had control over Kellie. This argument fails.

¶16. Since no discovery violation occurred in this case, the decision of the judge to grant or deny a motion for a continuance should be reviewed under an abuse of discretion standard:

> Trial judges have wide latitude in deciding whether to grant continuances, and that decision is left to the sound discretion of the trial judge. *Lambert v. State*, 654 So.2d 17, 22 (Miss. 1995). Denial of a continuance is not reversible unless manifest injustice appears to have resulted from the denial. *Hatcher v. Fleeman*, 617 So.2d 634, 639 (Miss. 1993).

*Morgan v. State*, 741 So.2d 246, 255 (Miss. 1999).

¶17. The trial judge declined to rule on Adams's motion for a continuance until he was able to hear testimony from Kellie. She testified that while her daughter had received the letter a year earlier, Kellie had since forgotten about the letter. She only discovered the letter when searching for a certified copy of her

daughter's birth certificate. Kellie noted that she found the letter on February 28, 1999, and turned it over, along with her daughter's birth certificate, to the State on March 1, 1999.

¶18. The trial judge made a thorough ruling in deciding to admit the letter into evidence:

> After hearing the testimony of [Kellie], the mother of [the daughter], it appears to the Court that this letter was discovered by her on the 28th day of February 1999 while looking for a birth certificate at her home in Prentiss County, Mississippi, that she was looking for the original birth certificate so that she could provide this to the district attorney's office; that in doing so she came across this letter, and she produced it to the district attorney's office on Monday, 3-1-99. The district attorney's office in turn produced the letter to Mr. Comer, the attorney for the defendant David Adams.

> This letter, the Court finds, is a letter written by the defendant, David Adams, to his daughter. It is in his handwriting, it is a letter that he wrote. The Court is of the opinion that it is no surprise to the defendant, because he is the author of this letter. Because there has been no discovery violation in the opinion of this Court, that the motion for a continuance or in the alternative the exclusion of this letter, both is [sic] overruled. The letter will be allowed to come into evidence. It will be allowed to be used for those reasons.

After reviewing the trial judge's ruling in this matter, we conclude that there was no abuse of discretion on the part of the trial judge. As such, this assignment of error is without merit.

## II. WHETHER THE TRIAL COURT ERRED BY REFUSING TO GRANT ADAMS'S REQUESTED JURY INSTRUCTIONS AS TO LESSER INCLUDED OFFENSES.

¶19. Adams assigns as error the trial judge's refusal to grant jury instructions D10, D11, D12, and D13 which addressed a supposedly lesser-included offense: simple assault. These proposed instructions stated:

D10

The Court instructs the jury that if you find that the state has failed to prove any one of the essential elements of the crime of Capital Rape, you must find the Defendant not guilty and you will proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt all the elements of the lesser crime of simple assault.

D11

The Court instructs the jury that if you find that the state has failed to prove any one of the essential elements of the crime of fondling, you must find Defendant not guilty and you will proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt all the elements of the lesser crime of simple assault.

D12

The Court instructs the jury that if you find that the state has failed to prove any one of the essential elements of the crime of attempted sexual battery, you must find the Defendant not guilty and you will

proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt all the elements of the lesser crime of simple assault.

D13

The Court instructs the jury that if you find from the evidence, if any, beyond a reasonable doubt that the Defendant knowingly or purposely injured or attempted to cause bodily injury to [the victim] then you shall find the Defendant guilty of simple assault.

¶20. The standard of review employed by this Court in reviewing challenges to the grant or denial of jury instructions is that of viewing the instructions as a whole. *Humphrey v. State*, 759 So.2d 368, 380 (Miss. 2000) As this Court stated in *Humphrey*:

A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Id.* (quoting *Heidel v. State*, 587 So.2d 835, 842 (Miss. 1991)(citations omitted)). Further,

[e]ven though based on meager evidence and highly unlikely, a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court. Where a defendant's proffered instruction **has an evidentiary basis**, properly states the law, and is the only instruction presenting his theory of the case, refusal to grant it constitutes reversible error.

*Id.* (quoting *Hester v. State*, 602 So.2d 869, 872 (Miss. 1992)(citations omitted)).

¶21. Whether simple assault is a lesser included offense of the crimes of capital rape, fondling, or attempted sexual battery is immaterial, as this Court has held in *Gangl* that:

the defendant may request an instruction regarding **any** offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment.

*Gangl v. State*, 539 So.2d 132, 136 (Miss. 1989)(emphasis added)(citing *Griffin v. State*, 533 So.2d 444, 447-48 (Miss. 1988)).

¶22. However, there must also be an evidentiary basis in the record warranting an instruction on simple assault. *Turner v. State*, 732 So.2d 937, 949 (Miss. 1999)(quoting *Ormond v. State*, 599 So.2d 951, 960 (Miss. 1992)). Indeed,

a lesser included offense instruction should be granted unless the trial judge-and ultimately this Court-can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge.)

*Humphrey*, 759 So.2d at 380 (quoting *Harper v. State*, 478 So.2d 1017, 1021 (Miss. 1985)). To warrant the lesser included offense instruction, a defendant must point to some evidence in the record from

which a jury could reasonably find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser included offense. *Toliver v. State*, 600 So.2d 186, 192 (Miss. 1992)(citing *Whitehurst v. State*, 540 So.2d 1319, 1327 (Miss. 1989); *Harper v. State*, 478 So.2d at 1021; *Fairchild v. State*, 459 So.2d 793, 799 (Miss. 1984)).

¶23. Adams argues that his admission that he slapped his daughter and her corroboration of that fact are enough to warrant an instruction on simple assault. After careful review of the evidence, we conclude that no rational basis appears upon which the jury would have found Adams guilty of simple assault and not capital rape, fondling, or attempted sexual battery.

¶24. A plethora of evidence existed to support the conviction of Adams of capital rape, fondling and attempted sexual battery. Numerous witnesses testified, including the victim and an eyewitness to the actual rape.

¶25. The most compelling evidence was presented by the victim herself. The victim, Adams's daughter, testified that her father took her into his bedroom and locked the door. Adams showed her a pornographic picture, asking her if she was a woman like the one in the picture. She testified that "[h]e said he was going to treat me like a woman." When she tried to leave the room, Adams grabbed her and threw her on the bed. He then ordered her to remove her clothes, which she did. Adams then undressed.

¶26. The victim then testified in graphic detail about sexual acts which Adams performed on her. Adams then threatened his daughter if she told anyone: "He told me if I ever told anybody he would beat me, and he meant beat me to death." The victim testified that similar incidents had happened eight or nine times before.

¶27. Adams's son, who witnessed the incident, also testified. Kellie Adams testified that her youngest son told her of the incident as soon as she arrived home. When she confronted her daughter, she also told her of her father's actions. Kellie examined her daughter's vaginal area which she described as being "really red." Kellie then confronted Adams who called the children liars and threatened to kill them all.

¶28. Kellie testified as to several letters that Adams had sent to her and her daughter. In one letter, Adams admitted being on top of his daughter and showing her the pornographic picture. In a second letter, Adams admitted telling his daughter that he was going to treat her like an adult. In the letter, Adams wrote: "if somehow I really did do what you said I did, please understand this, I don't remember it at all. Honestly, I don't. And if I did, please forgive me. Please . . . ."

¶29. Jo Jones, a sexual assault nurse who examined the victim, testified that the victim's hymen was torn. This tear was consistent with penetration by a penis, finger, or other object.

¶30. The social worker involved in the case stated that she had interviewed the victim on at least four separate occasions. The victim told her the same story each time. The victim told her that Adams had entered her vaginally and attempted to enter her anally.

¶31. Further, from the instructions given by the trial court, it is clear that the jury was adequately instructed that if the State did not prove every element of each crime charged beyond a reasonable doubt, they were to return a verdict of not guilty. As noted earlier, this Court views jury instructions as a whole. *Humphrey*, 759 So.2d at 380.

¶32. Jury instruction P1 outlines the elements of capital rape. It also charges the jury that "[i]f the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant, DAVID ADAMS, not guilty." P1 clearly instructs the jury that **every** element of capital rape must be proven beyond a reasonable doubt before Adams can be found guilty of the crime.

¶33. Jury instruction P2 outlines the elements of fondling. P2 states that if the State fails "to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant, DAVID ADAMS, not guilty." Again the jury is clearly instructed that if the State does not prove **every** element beyond a reasonable doubt, it is to find Adams not guilty.

¶34. Jury Instruction P3 outlines the elements of attempted sexual battery. It also states that if the State fails "to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant, DAVID ADAMS, not guilty." Once again the jury is instructed that the State must prove **every** element of attempted sexual battery before it can find Adams guilty of that crime.

¶35. Finally, jury instruction C-2 reads as follows:

> The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the Defendant guilty **beyond a reasonable doubt**. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt **beyond a reasonable doubt**. The defendant is not required to prove his innocence.
>
> The burden of proving **beyond a reasonable doubt** every material element of the crime with which the Defendant is charged is upon the State of Mississippi. If the State has failed to prove any material element of the crime charged **beyond a reasonable doubt**, you are to find the Defendant not guilty.

(emphasis added). Here the jury is told not once, but four times that the State must prove every element or each crime charged beyond a reasonable doubt before it can find Adams guilty of any crime.

¶36. There is no evidence in this record that Adams assaulted the victim but did not at the same time rape, fondle, and commit attempted sexual battery upon her. The proof was so overwhelming in this case that no reasonable jury could have found Adams not guilty of any of the crimes charged. The evidence did not support an instruction for simple assault. This issue is without merit.

### III. WHETHER THE TRIAL COURT ERRED BY SENTENCING ADAMS TO LIFE IMPRISONMENT WHEN THE JURY DID NOT FIX SUCH SENTENCE.

¶37. Adams contends that the judge had no authority to sentence him to life imprisonment because the jury did not impose that sentence upon him. The State argues that while technically Adams could not be sentenced to life for the capital rape, the point is moot because Adams was sentenced as a habitual offender.

¶38. Adams was indicted on October 15, 1997, for the July 19, 1997, capital rape of his daughter. Adams was convicted on March 5, 1999, and sentenced, by the judge, to life imprisonment for capital rape. Adams argues that he could not be sentenced to life imprisonment unless the jury sentenced him to such. As support for his argument, Adams cites *Luckett v. State*, 582 So.2d 428, 430 (Miss. 1991), *Cunningham v. State*, 467 So.2d 902, 906 (Miss. 1985), and *Lee v. State*, 322 So.2d 751, 753 (Miss.

1975). Adams's reliance upon these cases is ill-founded.

¶39. Luckett was indicted under Miss. Code Ann. § 97-3-65(2)(Supp. 1980), which covered the capital rape of minors age12 and over. The statute read in part:

> Every person who shall forcibly ravish any female of the age of twelve (12) years or upward, . . . upon conviction shall be imprisoned for life in the state penitentiary if the jury by its verdict so prescribes; and **in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty of imprisonment in the state penitentiary for any term as the court in its discretion, may determine.**

*Luckett*, 582 So.2d at 430 (quoting Miss. Code Ann. § 97-3-65(2) (Supp. 1980)(emphasis added)). Adams, however, was convicted under Miss. Code Ann. § 97-3-65(1)(1972)(emphasis added), which read in part:

> (1) Every person eighteen (18) years of age or older who shall be convicted of rape by carnally and unlawfully knowing a child under the age of fourteen (14) years, upon conviction, **shall be sentenced to death or imprisonment for life** in the State Penitentiary...

There is no language in the statute requiring the jury to fix the sentence at life. Under the statute, the only possible sentence for Adams was death or life imprisonment. *Johnson v. State*, 666 So.2d 784, 797 (Miss. 1995).

¶40. However, an amendment to Miss. Code Ann. § 97-3-65 revising the sentence for capital rape took effect on July 1, 1998. Adams was sentenced after the amendment took effect. As the State points out, this Court held in *Daniels v. State*, 742 So.2d 1140, 1143 (Miss. 1999), that:

> when a statute is amended to provide for a lesser penalty, and the amendment takes effect before sentencing, the trial court must sentence according to the statute as amended.

*Id.* at 1145. *Daniels* involved the exact issue that is now before this Court.

¶41. Daniels was indicted for capital rape under Miss. Code Ann. § 97-3-65(1)(1972), the same statute under which Adams was indicted. *Id.* at 1143. Daniels committed capital rape sometime between February 7, 1998, and February 13, 1998. *Id.* The amendment to Miss. Code Ann. § 97-3-65 revising the sentence for capital rape did not take effect until July 1, 1998. *Id.* at 1144. Daniels was sentenced on August 24, 1998. *Id.* The amended statute only provided for "imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years." *Id.* (quoting Miss. Code Ann. § 97-3-65(2)(c)(Supp. 1998)). The trial court had sentenced Daniels to life imprisonment. *Id.* at 1145. This Court held that "the trial court must sentence according to the statute as amended."*Id.* Because the trial judge had expressed reservations about sentencing Daniels to life imprisonment under that particular factual scenario, this Court reversed and remanded for resentencing. *Id.* at 1144-45.

¶42. In the present case, Adams was sentenced after the amendment to Miss. Code Ann. § 97-3-65 took effect. The amendment took effect July 1, 1998. Adams was sentenced on March 5, 1999. The amendment applicable to Adams's crime reads:

(2) Upon conviction for statutory rape, the defendant shall be sentenced as follows:

(c) If eighteen (18) years of age or older and convicted under paragraph (1)(b) of this section, to imprisonment for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, but not less than twenty (20) years.

Miss. Code Ann. § 97-3-65(2)(c)(Supp. 1999). The statute does not require that the jury sentence the perpetrator to life imprisonment. The statute simply reads that the perpetrator will be sentenced to life or some lesser term, not to be less than twenty years, in the State Penitentiary.

¶43. Had there been error on the part of the trial court, the life imprisonment sentence was justified based on Adams being indicted and convicted as a habitual offender under Miss. Code Ann. § 99-19-81(1972) which provides that:

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony...and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution...shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

### IV. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO AMEND THE INDICTMENT AND CHARGE ADAMS AS A HABITUAL OFFENDER.

¶44. Adams argues that it was error for the trial court to allow the State to amend the indictment a week before trial to charge Adams as a habitual offender. The State filed a motion to amend the indictment on February 22, 1999. The State attached a copy of the proposed amended indictment to the motion. The motion was heard and granted on February 25, 1999.

¶45. Adams has cited no authority other than Rule 7.09 in support of his position. This being the case, this Court is under no obligation to address this issue. *Jones v. State*, 740 So.2d 904, 911 (Miss. 1999)(citing *Cavett v. State*, 717 So.2d 722, 724 (Miss.1998)).

¶46. Procedural bar notwithstanding, this assignment of error is without merit. Rule 7.09 of the Uniform Rules of Circuit and County Court Practice allows for the amendment of an indictment in order to charge an offender as an habitual offender. Rule 7.09 reads:

All indictments may be amended as to form but not as to the substance of the offense charged. **Indictments may also be amended to charge the defendant as an habitual offender** or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss. Code Ann. § 63-11-30). **Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.**

U.R.C.C.C. 7.09 (emphasis added). Thus, an indictment may be amended to charge an offender as an habitual offender only if the offender is given a "fair opportunity to present a defense and is not unfairly surprised." U.R.C.C.C. 7.09.

¶47. On February 22, 1999, the State filed a motion to amend the indictment to charge Adams as an habitual offender. Attached to the motion was the proposed amended indictment. A hearing was held on pretrial motions on February 25, 1999. When the motion was discussed regarding the proposed amended indictment, there was no objection by Adams.

¶48. The original indictment did not charge Adams as a habitual offender. Prior to the events in this case, Adams had pled guilty to forgery and was sentenced to five years suspended. Adams had also pled guilty to two counts of grand larceny and was sentenced to five years suspended on each of those counts. As noted by the State in the amended indictment, each sentence arose from separate incidents at different times.

¶49. Adams was charged with capital rape, fondling, and attempted sexual battery. "The amendment to the indictment charging him as a[n] habitual offender did not affect the substance of the crime of which he was charged, but only the sentencing." *Burrell v. State*, 727 So.2d 761, 766 (Miss. Ct. App. 1998). Burrell was charged with the crime of sale or transfer of cocaine. *Id.* The State moved to amend the indictment to charge Burrell as an habitual offender. *Id.* at 765. Burrell cited this as error, asserting the amendment was unconstitutional. *Id.* The Court of Appeals affirmed, holding that:

> the imposition of habitual offender status in this case did not affect any defense Burrell could have asserted to the substance of the offense of which he was accused. The substance of the crime did not change at all. Only the sentencing of his crime was affected.

*Id.* at 766.

¶50. More recently, the Court of Appeals reiterated this rule in *Newell v. State*, 754 So.2d 1261 (Miss. Ct. App. 1999). Newell was convicted of conspiracy to commit armed robbery. *Id.* at 1263. The State was allowed to amend the indictment to charge Newell as an habitual offender. *Id.* at 1267. Newell argued that he was not given notice of the previous convictions that were to be used in the indictment to enhance his sentencing. *Id.* He further argued that his attorney was not given time to prepare a defense. *Id.* The State countered, arguing that Newell failed to show how he was surprised by the amendment and how his ability to prepare a defense was affected by the amendment. *Id.* The Court of Appeals affirmed holding that

> amending the indictment to charge Newell as a[n] habitual offender did not affect the substance of the crime of which he was charged, but only the sentencing. Burrell v. State, 727 So.2d 761 (¶ 9) (Miss.Ct.App. 1998). Newell argues that he was not given sufficient notice. However, the record shows that he was afforded a hearing on the motion to amend. The trial court found that Newell would not be hindered in his defense by allowing the motion. Newell was given sufficient opportunity to prepare a defense. Id. at 766 (¶ 11). Accordingly, this issue is without merit.

*Newell*, 754 So.2d at 1267.

¶51. The reasoning employed by the Court of Appeals in *Newell* is applicable to the present case. Adams was afforded a hearing on the motion to amend the indictment. However, Adams failed to make any objection to the amendment of the indictment.

¶52. Three days passed from the time the motion to amend was granted (February 25, 1999) to the beginning of trial (March 1, 1999). It was not necessary for Adams to prepare a defense based on the amended indictment during this time since, as stated earlier, habitual offender status did not affect the crimes with which Adams was charged. As this Court has noted, "prior offenses used to charge the defendant as

an habitual offender are not substantive elements of the offense charged." *Swington v. State*, 742 So.2d 1106, 1118 (Miss. 1999). In *Swington* this Court went on to state:

> the test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.

*Id.* Because amendment an indictment to charge habitual offender status does not affect the crimes charged, there is no need to prepare a defense for trial. This issue, as well as being procedurally barred, is without merit.

### V. WHETHER THE TRIAL COURT ERRED BY OVERRULING ADAMS'S MOTION IN LIMINE AND OBJECTION TO THE INTRODUCTION OF THE APPELLANT'S PRIOR RECORD AND BY ALLOWING THE STATE TO USE ADAMS'S PRIOR RECORD AFTER AN INADEQUATE *PETERSON* DETERMINATION.

¶53. Adams maintains that it was error on the part of the trial court to allow his prior convictions to be used for impeachment in the event his testified. Specifically, Adams argues that the trial court failed to apply the *Peterson* test in determining whether the prior convictions would be allowed. *Peterson v. State*, 518 So.2d 632 (Miss. 1987).

¶54. Adams filed a motion in limine regarding his prior record. The trial court denied the motion without addressing the *Peterson* factors. The trial court addressed the motion again on the first day of trial. During its argument, the State addressed the *Peterson* factors. After hearing arguments, the trial court denied the motion. Adams then asked for clarification that the convictions would only be used if he testified at trial.

¶55. Rule 609 of the Mississippi Rules of Evidence allows impeachment of a witness by admission of evidence of a prior conviction of a crime. Rule 609(a) states:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect on a party or (2) involved dishonesty or false statement, regardless of the punishment.

M.R.E. 609(a). Adams had pled guilty to two counts of grand larceny and one count of forgery. He had been sentenced to five years on each count with each sentence being suspended.

### FORGERY

¶56. M.R.E. 609(a)(2) allows the automatic admission of a crime if it "involve[s] dishonesty or false statement, regardless of the punishment." M.R.E. 609(a)(2). This Court has held that forgery falls within M.R.E. 609(a)(2) and is automatically admissible to impeach a witness. *Turner v. State*, 573 So.2d 1335, 1339-40 (Miss. 1990). The trial court in the case sub judice was correct in ruling that the forgery conviction could be used against Adams in the event he decided to testify.

## GRAND LARCENY

¶57. This Court has held that grand larceny does not fall within the category of a crime involving dishonesty or false statements. ***Blackman v. State***, 659 So.2d 583, 585 (Miss. 1995). The Court of Appeals has also stated that "[b]urglary is not generally considered to be a crime weighing sufficiently on truth and veracity. . . The same holds true for the crime of grand larceny." ***Bennett v. State***, 738 So.2d 300, 303 (Miss. Ct. App. 1999). This being the case, the trial court was obligated to address the ***Peterson*** factors in determining whether the admission of the grand larceny convictions would be more probative than prejudicial.

¶58. The facts in the case sub judice are very similar to those addressed in ***Henderson v. State***, 641 So.2d 1184 (Miss. 1994). Henderson was tried and convicted of aggravated assault. At trial, his previous conviction of grand larceny was admitted into evidence. ***Id.*** at 1186. Henderson appealed, arguing that it was error for the trial court to allow the conviction into evidence. ***Id.*** This Court affirmed his conviction stating:

> The trial court correctly applied the so-called ***Peterson*** factors to allow the use of this prior conviction for impeachment. ***Peterson v. State***, 518 So.2d 632 (Miss. 1987); See also, ***Settles v. State***, 584 So.2d 1260, 1264 (Miss. 1991). What we have here is a run-of-the-mill previous felony conviction that is not unduly prejudicial because of similarity, heinousness or any other reason. The decision of the circuit court to allows this conviction for impeachment pursuant to the provisions of Miss.R.Evid. 609(a)(1), was well within its discretion.

***Henderson,*** 641 So.2d at 1186.

¶59. Adams was convicted of capital rape, fondling, and attempted sexual battery. As was the case in ***Henderson***, "[w]hat we have here is a run-of-the-mill previous felony conviction that is not unduly prejudicial because of similarity, heinousness or any other reason." ***Id.***

¶60. ***Henderson*** notwithstanding, the trial judge's consideration of the ***Peterson*** factors was sufficient. In ***Peterson v. State***, 518 So.2d 632, 636 (Miss. 1987), this Court outlined the factors the trial court should take into consideration in determining whether a prior conviction should be admitted into evidence. Those factors include:

> (1) The impeachment value of the prior crime.
>
> (2) The point in time of the conviction and the witness's subsequent history.
>
> (3) The similarity between the past crime and the charged crime.
>
> (4) The importance of the defendant's testimony.
>
> (5) The centrality of the credibility issue.

***Id.***

¶61. It is clear from our review of the trial court's ruling that the judge did take each of the ***Peterson*** factors into consideration:

¶62. **The impeachment value of the prior crime:** The trial court felt that because there was little physical evidence in the case, it was imperative for the jury to know of Adams's past. While the grand larceny convictions alone would not go toward Adams's propensity for truthfulness, those convictions used in combination with the forgery conviction would. This weighs in favor of admissibility.

¶63. **The point in time of the conviction and the witness's subsequent history:** Adams pled guilty to the two grand larceny charges and was sentenced in May, 1997. This sentencing occurred a mere two months before the rape of his daughter took place. Adams had been placed on probation for those convictions, which had been revoked prior to his standing trial for capital rape. This factor weighs in favor of admissibility.

¶64. **The similarity between the past crime and the charged crime:** There is no similarity between grand larceny and capital rape, fondling, or attempted sexual battery. It is unlikely that Adams would suffer undue prejudice due to the admission of these convictions. The lack of similarity between the crimes weighs in favor of admissibility.

¶65. **The importance of the defendant's testimony:** The trial court noted that this was a case based substantially on witness testimony, not necessarily physical evidence. This case arguably hinges upon the victim's word against Adams word. Adams presented four witnesses who testified that he had been talking to them over a citizen's band radio at the time the rape occurred. In light of the availability of these defense witnesses, Adams's credibility is certainly at issue.

¶66. **The centrality of the credibility issue:** Because this case hinged on the victim's testimony as well as the testimony of her younger brother, it was very important that Adams's propensity for truth be established. This factor weighs in favor of admissibility.

¶67. The trial judge adequately considered the *Peterson* factors in determining that Adams's previous felony convictions would be allowed into evidence in the event Adams testified at trial. Accordingly, this issue is without merit.

## CONCLUSION

¶68. After careful review, this Court affirms Adams's convictions and sentences for the capital rape, fondling, and attempted sexual battery of his twelve-year-old daughter. The judgment of the Prentiss County Circuit Court is affirmed.

¶69. **COUNT I: CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT WITHOUT PAROLE, AS AN HABITUAL OFFENDER UNDER SECTION 99-19-81, AFFIRMED. COUNT II: CONVICTION OF FONDLING AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I. COUNT III: CONVICTION OF ATTEMPTED SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I AND CONSECUTIVELY WITH THE SENTENCE IN COUNT II.**

    **PRATHER, C.J., BANKS, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ,**

**JJ., CONCUR.**