662 So.2d 1100 (1995)
Timothy B. ROBINSON
v.
STATE of Mississippi.
No. 92-KA-00444-SCT.
Supreme Court of Mississippi.
October 26, 1995.
*1102 David N. Gillis, Jackson, for appellant.
Michael C. Moore, Attorney General, W. Glenn Watts, Sp. Asst. Attorney General, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
Timothy Robinson was convicted by a jury of the Hinds County Circuit Court on March 11, 1992, on two counts of kidnapping and one count of aggravated assault. Finding no merit to his allegations of jury tampering or to his arguments that evidence should not have been admitted, that instructions about the child's testimony should have been given, and that the verdict was against the weight of the evidence, we affirm the jury's decision.

I.
Timothy Robinson and Brenda Rand lived together in the White Rock apartment complex in Jackson. On July 26, 1991, Robinson came home from work, bathed and ate the meal Rand had prepared. While Rand was washing the dishes, she was stabbed in the back. The only other person in the room was Robinson.
Rand's nine-year old daughter, Nicole, ran into the kitchen and saw her mother lying on the floor in a pool of blood. She began screaming and Robinson told her to "shut the f____ up" or he would finish her mother off and stab her, too. He ordered Rand to get up, but she had no feeling in her legs and could not move. He told Rand he would take her to the hospital and before leaving to get his car, directed Nicole to put all the knives in the apartment, including the bloody one on the floor, in the clothes dryer.
Robinson and the child dragged Rand down the stairs and into the car. Rather than taking her to the hospital, Robinson took Rand against her will to Belzoni, his hometown. On the way, when Rand fell from the back seat onto the floorboard, Robinson allegedly told her to get up or he would jump out and drive the car off the Yazoo Bridge. Once in Belzoni, they stopped at a bar called The Ranch, drove around town looking for Robinson's brother, and then returned to The Ranch, where Pat Magee, a friend of Rand's, came out to the car. Magee and her brother then drove Rand to the hospital. Robinson later called Rand's sister, Rebecca Hughes, to determine what hospital she was in because he wanted to "finish her up."
Robinson was indicted during the September, 1991 term by a grand jury of the First Judicial District of the Hinds County Circuit Court on one count of aggravated assault and two counts of kidnaping. He was examined by a state-appointed psychiatrist at the request of his attorney, but apparently found competent to stand trial. The case was tried on March 10 and 11, 1992, and the jury returned a verdict of guilty on all three counts. Robinson was sentenced to life in prison on each of the kidnapping charges and twenty years for the aggravated assault charge, with the three sentences to run consecutively. His motion for judgment of acquittal notwithstanding the verdict of the jury, or in the alternative, for a new trial, was denied. Thereafter, he timely perfected this appeal.

II.
Robinson first asserts that the circuit court erred in admitting his February 5, 1992 letter to Rand and further, in denying his motion for a mistrial on grounds that the letter was not timely disclosed to the defense.
During the course of the trial, the State offered into evidence a letter that Robinson had written to Rand a month before the trial. In the letter, he apologized for the pain he had caused, asked for her forgiveness and expressed his love for her. Robinson's attorney objected to admission of the letter on grounds that it was not produced in discovery. The prosecution claimed that it had only learned of the letter from Rand on the day before the trial. At that time, the defense *1103 was notified. The State's attorney showed the letter to Robinson's attorney, who immediately handed it back without comment. The circuit court noted that no objections were made to the letter prior to trial. The State's attorney stated in court that:
I told Mr. Gillis after talking with Ms. Rand yesterday morning and learning of its existence and generally what was said in it.
And the way it came about, I had asked Ms. Rand whether or not this Defendant, as many defendants do in cases, had made any attempt to contact her or to communicate with her. She told me that he had, that he had written a letter. I told her I would like to see it.

* * * * * *
During the interim period of time, I did have a conversation with Mr. Gillis. I told him or reminded him that in previous discovery that it was referred  that photographs were referred to, that I had those photographs, as well as the knife in question, in my office if at anytime he wanted to come look at it.
He did come to my office. And in looking at the photographs, I explained to him the existence of the letter but I did not have the letter itself yet. I explained to him it was my understanding that basically the letter was an admission by his client that he had done this and that he was sorry for doing it, and that I would make the letter available to him as soon as I had it.
Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice requires the prosecutor to exercise due diligence in discovering unknown written or recorded statements of the defendant. Rule 4.06(a)(2) provides:
(a) Upon written request by the defendant, the prosecution shall disclose to each defendant or to his or her attorney, and permit him or her to inspect, copy, test, and photograph, without the necessity of court order, the following which is in the possession, custody, or control of the State, or the existence of which is known, or by the exercise of due diligence may become known, to the prosecution:
(2) Copy of any written or recorded statement of defendant and the substance of any oral statement made by the defendant;
Robinson's attorney filed a Motion For Discovery requesting any such statement be provided. "[E]ven the most meticulous discovery is useless if not timely. Discovery, to be sufficient, must be made at a time far enough in advance of trial to give the defense a `meaningful opportunity to make use of it.'" Stewart v. State, 512 So.2d 889, 892 (Miss. 1987).
This Court has noted that "Rule 4.06 and the Box guidelines are designed to avoid `ambush' or unfair surprise to either party at trial." Holland v. State, 587 So.2d 848, 866-67 (Miss. 1991). As articulated in Davis v. State, 530 So.2d 694 (Miss. 1988), the guidelines for discovery set out in Box v. State, 437 So.2d 19 (Miss. 1983), provide as follows:
(1) Upon the defense's objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
(2) If after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence the trial court must grant the requested continuance.
Davis v. State, 530 So.2d 694, 698 (Miss. 1988), citing Box v. State, 437 So.2d at 23-26). Outside the presence of the jury, Robinson's attorney asserted that the letter was extremely prejudicial to his client and asked for a mistrial, which, we have stated, may serve as the "functional equivalent" of a motion for continuance. West v. State, 553 So.2d 8, 16 n. 6 (Miss. 1989). The circuit court denied the motion and asked if the State was satisfied that the Box requirements had been met.
*1104 The circuit court then ordered a short recess, allowing Robinson to further examine the letter. "Where the state is tardy in furnishing discovery which it was obligated to disclose, the defendant is entitled upon request to a continuance or postponement of the proceedings [sic] reasonable under the circumstances." Stewart v. State, 512 So.2d 889, 892-93 (Miss. 1987). We further have stated, "By no means does this mean invariably that the defendant will be entitled to a continuance until the next term of court. There will no doubt be cases where postponement of a day or two, or in some cases even an hour or two, will suffice." Id. Robinson's counsel was allowed a reasonable period of time in which to review the letter. We cannot say that he was ambushed or prejudiced by this letter since there is no indication that it would have made any difference if the attorney had known of the letter sooner. Accordingly, we find no merit to this assignment of error.

III.
Based on the voir dire of one potential juror who was stricken from the venire panel by the State, Robinson raises allegations of jury tampering. When the State queried potential jurors about family members or close friends who had been victims of crime, venireman Stacy Brown responded that his mother had been shot and killed. During the course of questioning, the following exchange took place between Assistant District Attorney Bobby Delaughter and Brown:
Q. The person that was convicted in that case, Mr. Brown, do you remember his name?
A. Yes, sir?
Q. What was that?
A. Curtis. Well, it was out of town. Curtis Dent.
Q. Okay. This was in Chicago?
A. Yes, sir.
Although he raised no objections at trial and made no mention of the exchange in his post-trial motions, Robinson now argues that the prosecution could not have known that Brown's mother was murdered in Chicago unless there were prior conversations with him. He further suggests that if there was communication with Brown, then there could have been communication with other venire members. However, we have said that a trial judge cannot be put in error when he was not given the opportunity to address the issue. Holland v. State, 587 So.2d 848, 868 (Miss. 1991).
Notwithstanding the procedural bar, this Court takes allegations of jury tampering very seriously. Avery v. State, 555 So.2d 1039, 1046 (Miss. 1990) (condemning jury tampering as a "vicious crime"). However, there is nothing in the record to suggest that the prosecution tampered with Brown or any other venire member. This Court will not consider matters which do not appear in the record and must confine itself to what actually does appear in the record. Dillon v. State, 641 So.2d 1223, 1225 (Miss. 1994). Moreover, we cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record. Ross v. State, 603 So.2d 857, 861 (Miss. 1992). As we stated in Mason v. State, 440 So.2d 318 (Miss. 1983),
We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them. [citations omitted].
Id. at 319. It is the appellant's duty to provide this Court with a record in support of the issues raised on appeal. M.R.A.P. 11(c). Robinson has failed to provide us with any evidence that the State communicated with Brown or any other potential juror prior to the trial or outside voir dire. Without more, we can only speculate.

IV.
Robinson variously contends that the verdict of the jury was against the overwhelming weight of the evidence, contrary to the law, and the result of bias, passion, and prejudice; that Instruction D-1, a peremptory instruction should have been granted; that his motion for a directed verdict should *1105 have been granted at the conclusion of the State's case-in-chief; and finally, that his motion for judgment of acquittal notwithstanding the verdict of the jury or, in the alternative, a new trial should have been granted.
In determining whether a jury verdict is against the overwhelming weight of the evidence, we must accept as true the evidence which supports the verdict. We will reverse only where the trial court abused its discretion in not granting a new trial. Isaac v. State, 645 So.2d 903, 907 (Miss. 1994) (citations omitted). Smith v. State, 646 So.2d 538 (Miss. 1994) provides the appropriate standard of review when considering directed verdicts:
In considering a motion for a directed verdict, this Court on review must consider all evidence introduced in the light most favorable to the State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom. If there is sufficient evidence to support a guilty verdict, the motion for a directed verdict must be overruled.
Id. at 542. This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." McNeal v. State, 617 So.2d 999, 1009 (Miss. 1993), quoting Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983).
The motions at issue challenge the legal sufficiency of the evidence. The facts of the case, however, support the jury's verdict. Robinson was the only other person in the kitchen at the time of the stabbing. Since Rand was stabbed in the back, the wound could not have been self-inflicted. While Nicole was not in the kitchen at the time, she heard her mother fall against the garbage can. Both Rand and her daughter identified the knife. Furthermore, both Rand and her daughter testified that Robinson threatened to kill them if they did not remain quiet. That neither Rand nor Nicole actually saw Robinson stab Rand is of little consequence. We have held that the State may prove a crime solely by circumstantial evidence as long as that evidence proves the defendant's guilt beyond a reasonable doubt. Walton v. State, 642 So.2d 930, 932 (Miss. 1994). Because the evidence points overwhelmingly to Robinson's guilt, there was no error in denying the motions.
Neither Robinson nor the State discuss in their briefs the denial of jury instruction D-1, a peremptory instruction which stated, "The Court instructs the jury that you should find Timothy Robinson not guilty." The standard of review for a peremptory instruction is identical to that of the denial of the directed verdict. Smith v. State, 646 So.2d at 542. In considering a request for a peremptory instruction, the trial judge is required to accept the State's evidence as true, including reasonable inferences that may be drawn therefrom, and to totally disregard evidence favorable to the defendant. Isaac v. State, 645 So.2d 903, 907 (Miss. 1994). The State's evidence was the only evidence presented. Based on that evidence, the trial judge cannot be held in error for denying the peremptory instruction.

V.
Robinson next asserts that he was prejudiced by the admission of "inflammatory" pictures of the crime scene. However, the trial court is afforded broad latitude in admitting photographs. In Williams v. State, 544 So.2d 782 (Miss. 1987), we stated:
A review of our case law indicates that the decision of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and extenuation of probative value. At this point in the development of our case law, no meaningful limits exists in these so-called balance of probative/prejudicial effect of photographs test.
Id. at 785. This Court will reverse a lower court's ruling on the admissibility of photographs only when there has been an abuse of discretion. Alexander v. State, 610 So.2d 320, 338 (Miss. 1992); Jenkins v. State, 607 So.2d 1171, 1175 (Miss. 1992). There is nothing gruesome, inflammatory or prejudicial about the pictures admitted into evidence. They depict the knife used in the assault, other kitchen knives gathered up and placed in the dryer, and blood stains on the kitchen *1106 floor of the apartment where the incident occurred. There is no merit to this argument.

VI.
Robinson finally argues that the trial court erred in refusing to grant his proposed jury instruction D-11, which states:
The Court instructs the jury that Carolyn Nicole Rand is a child and was nine (9) years old at the time of the alleged offense. In examining the testimony of Carolyn Nicole Rand, you should take into consideration the following:
A. The youthfulness of the witness;
B. Her capacity and ability to observe events and to recollect and communicate those events; and
C. Her capacity and ability to understand questions and to frame and make intelligent answers.
Robinson argues that since he removed any reference to Nicole's capacity to tell the truth, the instruction should have been granted. We have stated, "If the jury is to be instructed at all with respect to the testimony of a child, it should be told to view the testimony in the light of the child's age and understanding, not his veracity." Bandy v. State, 495 So.2d 486, 493 (Miss. 1986). See also Jones v. State, 606 So.2d 1051, 1060 (Miss. 1992) (testimony of child witness to be considered in light of age and understanding; instruction regarding veracity not allowable). Thus, an instruction directing the jury to give the testimony of a child special consideration is not mandatory and the circuit court's refusal to grant Instruction D-11 is, at best, harmless error.

VII.
Finding no merit to the arguments raised in this appeal, we affirm Robinson's conviction and sentences.
COUNT I: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
COUNT II: CONVICTION OF KIDNAPPING AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVE TO SENTENCE IN COUNT I.
COUNT III: CONVICTION OF KIDNAPPING AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONSECUTIVE TO SENTENCES IN COUNT I AND COUNT II.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.