778 So.2d 144 (2000)
Ricky BOYLES, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01650-COA.
Court of Appeals of Mississippi.
September 19, 2000.
Rehearing Denied December 5, 2000.
Certiorari Denied February 15, 2001.
*145 David Michael Brisolara, Ackerman, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., BRIDGES, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Ricky Boyles appeals his conviction on one count of aggravated assault and one count of possession of a firearm by a convicted felon, raising the following issue

I. DID THE TRIAL COURT ERR BY FAILING TO CONDUCT AN INVESTIGATION INTO ALLEGED JURY MISCONDUCT?
Finding no error, we affirm.

FACTS
¶ 2. Boyles was convicted of aggravated assault and possession of a firearm by a convicted felon arising from an attack he made on his former wife, Bertha Armetrout, which resulted in her hospitalization. The State alleged that Boyles attempted to shoot Ms. Armetrout with a shotgun while beating her and later struck her with the butt of the gun. Boyles was sentenced to serve a fifteen year term, with five years suspended, for the assault charge and a three year term for the firearm charge, with the sentences to be served concurrently.
¶ 3. Boyles made a motion for new trial and to set aside the sentence based on grounds of jury tampering and/or misconduct. *146 In support of this motion, Boyles offered an affidavit of Della Brisolara, assistant to counsel for Boyles. This affidavit stated that after the trial, Ms. Brisolara overheard Ms. Armetrout, the State's key witness at trial, admit to counsel for Boyles that she (Ms. Armetrout) had spoken to members of the jury during the trial. A second affidavit of Boyles himself stated that he noticed Ms. Armetrout having a conversation with a juror during a lunch recess. A third affidavit of Ms. Brisolara stated that Boyles had mentioned the conversation during a lunch recess. In response to this motion, the court issued an order, stating the following:
This court has reviewed the Motion for New Trial that has been filed in this cause. In reviewing the motion, this court finds that there is an allegation that jury tampering and/or juror misconduct occurred during the trial in this case. In order for this court to conduct a hearing to determine the merits of the allegation, the defendant must provide to this court the names of all jurors that he contends were tampered with or who were engaged in misconduct.
IT IS THEREFORE ORDERED that within five (5) days of the entry of this order, the defendant shall file with the clerk of this court a list of the names of all jurors who he alleges were either tampered with or who were engaged in misconduct.
IT IS FURTHER ORDERED that should the defendant fail to file the list, this court will consider the allegations of jury tampering and/or misconduct to be waived.
¶ 4. In response to the order, Boyles identified the juror as "unknown by the Defendant or his counsel; however, he was a black male juror ... believed to have been either juror number 2 or 3." Even though Boyles was unable to offer a more accurate identity of the jurors involved in the alleged inappropriate conduct, the lower court conducted a hearing to determine the merits of the allegation, giving Boyles ample opportunity to produce evidence to support this motion. At this hearing the only witnesses that were called was Ms. Brisolara and Boyles himself. The two witnesses merely attested to the validity of the affidavits which accompanied the motion for new trial. However, Boyles had not subpoenaed either Ms. Armetrout or any of the jurors. When the court asked why neither Ms. Armetrout nor any of the jurors were subpoenaed, Boyles' counsel asserted that his client had limited resources.
¶ 5. The court held that the affidavits and testimony of Ms. Brisolara were all based on hearsay, therefore, offering no support to the motion. The court further held that the affidavit and testimony of Boyles was not credible, stating that it was clear that he had perjured himself during trial proceedings. For these reasons, the trial court denied the motion for a new trial, holding that there was no credible evidence of improper contact between the victim and the individual jurors.

ANALYSIS
¶ 6. "It is absolutely imperative that the jury be unbiased, impartial, and not swayed by the consideration of improper, inadmissible information." Hickson v. State, 707 So.2d 536, 544 (Miss.1997). While allegations of jury tampering are taken very seriously, Avery v. State, 555 So.2d 1039, 1046 (Miss.1990) (condemning jury tampering as a "vicious crime"), it has been firmly established by the Mississippi Supreme Court that "[a]llegations of fact in a motion for a new trial must be supported by proof." Dyer v. State, 300 So.2d 788, 789 (Miss.1974). Furthermore, "[i]t is the duty of the movant to support his motion by proof, and in the absence of proof in support of the motion, the presumption in favor of the correctness of the action of the trial court will prevail." Dean v. State, 300 So.2d 797, 801 (Miss. 1974), (citing Brown v. State, 252 So.2d 885, 887 (Miss.1971)). See also Allman v. State, 571 So.2d 244, 246 (Miss.1990); Gordon *147 v. State, 349 So.2d 554, 555 (Miss. 1977). In the event that proof is offered, it must be "sufficient proof of an alleged outside influence." Lewis v. State, 725 So.2d 183 (Miss.1998). See also King v. State, 580 So.2d 1182, 1187 (Miss.1991); Carter v. State, 493 So.2d 327, 329 (Miss. 1986). "The mere possibility that the jurors may have been influenced by some extraneous matter is not enough to set aside a verdict." Allman, 571 So.2d 244, (citing Irving v. State, 361 So.2d 1360, 1368 (Miss.1978), (emphasis added)). See also Pepper v. State, 200 Miss. 891, 27 So.2d 842, 843 (1946); Gordon, 349 So.2d at 555.
¶ 7. While jurors are not able to impeach their own verdict by testifying about motives or influences affecting deliberations, they may testify about "misconduct in their presence or about outside influences on the jury panel." Lewis, 725 So.2d at 189, (citing Fairman v. State, 513 So.2d 910, 915-16 (Miss.1987)). See also M.R.E. 606(b) (stating that a juror can only testify "on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror"). Therefore, the proof to show jury tampering is available to the movant, provided the movant follows proper procedure. Furthermore, even if evidence had been provided which supports this assignment of error, "[t]he general rule recognized by this Court ... is, that if the verdict was rendered under circumstances in which its purity might have been affected, it must be set aside; if it could not have been affected, it will be sustained." Gerlach v. State, 466 So.2d 75, 78 (Miss.1985), (citing Ned v. State, 33 Miss. 364, 372-73 (1857)).
¶ 8. Gladney v. Clarksdale Beverage Company, Inc., 625 So.2d 407 (Miss.1993), attempts to clarify the procedure of handling alleged improper jury contact or misconduct. As to the standard of proving jury misconduct, the Gladney court states the following:
Once an allegation of juror misconduct arises, then the next step is to consider whether an investigation is warranted. In order for the duty to investigate to arise, the party contending there is misconduct must make an adequate showing to overcome the presumption in this state of jury impartiality. Juror polling shall only be permitted by an attorney, outside the supervision of the court, upon written request. At the very minimum, it must be shown that there is sufficient evidence to conclude that good cause exists to believe that there was in fact an improper outside influence or extraneous prejudicial information. Although a minimal standard of a good cause showing of specific instances of misconduct is acceptable, the preferable showing should clearly substantiate that a specific, non-speculative impropriety has occurred. The sufficiency of such evidence shall be determined by the trial court if a post-trial hearing is indeed warranted under these standards.
Gladney, 625 So.2d at 418.
¶ 9. The case at hand is very similar to Robinson v. State, 662 So.2d 1100 (Miss. 1995), in which the defendant made a motion for a new trial after being found guilty for kidnaping and assault. Robinson claimed that the prosecution had made inappropriate contact with members of the jury. The Mississippi Supreme Court pointed out that no objections were made at trial and that "a trial judge cannot be put in error when he was not given the opportunity to address the issue." Robinson, 662 So.2d at 1104, (citing Holland v. State, 587 So.2d 848, 868 (Miss.1991)). The court went on to note that there was nothing in the record to suggest that the prosecution tampered with any member of the jury and, therefore, matters which do not appear in the record would not be considered by the court. Robinson, 662 So.2d at 1104. The court went on to explain:
We have on many occasions held that we must decide each case by the facts *148 shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them. [citations omitted]. Id. at 319. It is the appellant's duty to provide this Court with a record in support of the issues raised on appeal. M.R.A.P. 11(c).
Robinson, 662 So.2d at 1104.
¶ 10. Boyles offered insufficient proof to support the assertion that Ms. Armetrout had any kind of improper outside influence upon the jury. Boyles failed to meet the test of offering "a minimal standard of a good cause showing of specific instances of misconduct," nor did Boyles make a preferable showing that "should clearly substantiate that a specific, non-speculative impropriety ha[d] occurred." Gladney, 625 So.2d at 418.
¶ 11. The trial court made an excellent finding as to the quantum of proof presented at the new trial hearing and we quote extensively:
This court does not consider the affidavits of Mrs. Brisolara to be of any consequence. They certainly do not contain enough proof to set aside the verdict of the jury. Her affidavits contain nothing but hearsay statements. She has no personal knowledge of any contacts between Bertha Armetrout and any juror.
This court places no credibility whatsoever in the testimony of Ricky Boyles. It was clear to this court from the testimony during Boyles' trial that he either perjured himself during his preliminary hearing or at the trial. The testimony of a perjurer carries little weight with this court. Ricky Boyles also has a vested interest in claiming that he saw improper contact between a witness and a juror during the trial. After all, he is the defendant in this case. He is the person most interested in overturning the verdict of the jury. Most any defendant would testify that he observed an improper contact between a witness and a juror if he thought that such testimony would help him to obtain a new trial.
This court also finds it interesting that Boyles did not allege that he saw improper contact between a witness and a juror on the day of his trial. Had he done so, and had it been proven, this court could have seated an alternate juror in the place of one found to have had improper contact with a witness. Instead, he waited until he was convicted to raise the issue.
Although the defendant alleges that Bertha Armetrout had improper contact with jurors during the course of the trial, the defendant failed to call her as a witness at the hearing on the motion for a new trial. The defendant alleges that the improper contact was between Armetrout and a black male juror and a female juror. There were four black males that sat as jurors during the trial. They were Terry Evans, Adorth Ashford, James Arterberry, and Robert Lawrence, Jr. There were also four females that sat as jurors. They were Mary Jane Ivy, Dorothy Louise Mitchell, Mary Frances McKinney, and Cynthia Diane Sills. It would have been very easy for the defendant to subpoena all of these individuals to testify. The fact that no effort was made to call any of these jurors to testify at the hearing is a strong indication to this court that no improper contract occurred, and that the defendant knew that no such contact occurred.
¶ 12. Although it is impossible to set a firm rule as to how to determine the question of jury tampering in every case, we agree with the trial court's finding that in this case; Boyles failed to provide the court with sufficient evidence to warrant any further investigation. We hold that the trial court did not abuse its discretion in declining to order a new trial.
*149 ¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF CHOCTAW COUNTY OF CONVICTION OF COUNT I OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS WITH FIVE (5) YEARS SUSPENDED; COUNT II OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND A SENTENCE OF THREE (3) YEARS, WITH SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, AND PAYNE, JJ., CONCUR. McMILLIN, C.J., NOT PARTICIPATING.