# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00199-COA

**WILLIAM A. PENTON A/K/A WILLIAM ALFRED PENTON JR. A/K/A WILLIAM PENTON**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2017 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER, BY: HUNTER NOLAN AIKENS WILLIAM A. PENTON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/16/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     A Pearl River County jury found William A. Penton guilty of one count of possession of methamphetamine.  The trial court sentenced Penton as a habitual offender to serve eight years in the custody of the Mississippi Department of Corrections (MDOC).  Penton appeals his conviction and sentence.  Penton's counsel has filed a brief pursuant to *Lindsey v. State*, 939 So. 2d 743 (Miss. 2005).  His counsel represents that he diligently searched the record for any arguable issues that could be presented on appeal but found none.  Penton filed a pro

se supplemental brief. In his pro se brief, Penton offers his description of what took place on the day of his arrest, but there is no support in the record for his assertions. Penton also does not set forth any assignments of error in his pro se brief or provide any argument that would support reversal of his conviction and sentence. Based upon our thorough review of Penton's supplemental pro se brief and the record, we find no arguable issues for appellate review. We therefore affirm Penton's conviction and sentence without prejudice to his right to seek post-conviction relief.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. Penton was indicted on October 24, 2016, for possession with the intent to distribute 2.44 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Mississippi Code Annotated section 41-29-139(a) (Rev. 2013). In August 2017, the State moved to amend the indictment to charge Penton as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015). At a pretrial motion hearing on December 1, 2017, the trial court granted the State's motion and entered an order on the same day amending the indictment to charge Penton as a habitual offender.

¶3. The State also filed a pretrial motion to allow testimony at trial under Mississippi Rule of Evidence 404(b)[1] that Penton had been the target of a narcotics investigation on December

---

[1] Rule 404(b) provides as follows:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible

29, 2015. Penton was captured on video selling methamphetamine to a confidential informant. An unidentified black male was also in that video. The State argued that the evidence was relevant to show intent and to explain the circumstances of the investigatory stop that took place the next day when Penton and the same unidentified black male who was in the video were arrested. That motion, as well as defense counsel's omnibus motion in limine, were also heard on December 1, 2017.

¶4.     Regarding the State's Rule 404(b) motion, the trial court held that it would not allow any mention of the video showing Penton selling the methamphetamine but granted the State's motion to a limited extent. The prosecutor and defense counsel agreed to prepare an order delineating the scope of any testimony regarding the narcotics investigation that would be allowed at trial. The trial court's order granting this motion allowed the State to introduce evidence and testimony at trial that William Penton "was also the target of a narcotics investigation concerning methamphetamine on December 29, 2015 which continued through December 30, 2015." The trial court also granted the defense counsel's omnibus motion in limine "for the most part" and noted the specific requests that were not ripe but that may

---

to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

M.R.E. 404(b).

3

become so as the trial progressed.

¶5.    Penton was tried on December 7, 2017. Before trial started Penton's counsel stated on the record that there was no objection to the State adding a lesser-included offense of simple possession of the same substance and amount as in the possession-with-intent-to-distribute charge (2.44 grams of methamphetamine).

¶6.    The trial transcript reflects that on December 29, 2015, narcotics investigators Joe Garcia and Van Giadrosich of the Pearl River County Sheriff's office started an investigation targeting William Penton. As noted, on that day they captured Penton on video selling methamphetamine, and there was also an unidentified black male in the video. Detectives Garcia and Giadrosich both testified that the next day they saw Penton riding as a passenger with the unidentified black male in the same car (a silver Honda Accord) that they were in the day before when the investigation was started.[2] Detectives Garcia and Giadrosich further

_____

[2] In later testimony Detective Garcia testified, without objection, that methamphetamine was involved in their investigation on December 29. In compliance with the trial court's order on the State's Rule 404(b) motion the State did not present any testimony that Penton was selling the methamphetamine, or any testimony about the video of this transaction. Specifically, Detective Garcia testified:

[Garcia]:      The investigation began on December 29th of 2015. Mr. Penton and an unknown black male was a target of a narcotics investigation that started on the 29th. On December 30th, this case led over to that date. Myself and my partner, Detective Van Giadrosich . . . observed a silver Honda Accord being driven by an unidentified black male and the passenger was Mr. William Penton.

[Counsel]:     What was the significance of that Honda Accord?

testified that they pulled the car over and made an investigatory stop in order to identify the driver based on the information they had gathered in the investigation the day before, which led them to believe that Penton was in possession of methamphetamine.

¶7.     Both witnesses testified that Detective Giadrosich approached the passenger's side of the vehicle, and Detective Garcia approached the driver's side of the vehicle.  Detective Garcia asked the driver for his identification.  The driver said he did not have any written identification, but he identified himself as Drayvious Johnson.  The transcript reflects that Detective Garcia then asked Johnson to exit the car to check his identity with dispatch and to conduct a protective search of Johnson for weapons.  Detective Giadrosich testified that

---

> [Garcia]:     It was involved in the case from the day before when the investigation started. . . .  Due to the fact that I needed to identify the unidentified black male, and I had first-hand information from investigative techniques used in the case that Mr. William Penton was possibly in possession of methamphetamine with intent to distribute, I conducted an investigative stop at the Buddy Hop [gas station] in Picayune.

Similarly, Detective Giadrosich testified:

> [On] December 29th, myself and Detective Joe Garcia started an . . . methamphetamine-related narcotics investigation . . . where William Penton and an unidentified black male was the target of this investigation. . . . [The investigation] [w]ent over into the next day, which [was] December 30th. We were in Picayune, and we recognized the vehicle, that we had saw these two subjects in the day before pass by, and we saw them in the vehicle.  We needed to identify the driver, and we had knowledge that we had gathered through the course of this investigation that William Penton was possibly in possession of methamphetamine.  We conducted a traffic stop on Bruce Street in Picayune by the Buddy Hop gas station.

while this was happening, he saw Penton "moving his hand around leaning up," so he asked Penton to exit the car to pat him down for weapons. Detective Giadrosich testified that as he began to pat-down Penton, Penton himself pushed off the car, turned around, "and grabbed me and started fighting with me." Detective Giadrosich further testified that he saw that Penton's face was turning red, and that he saw a plastic bag in Penton's mouth. Penton continued to fight, and Detective Giadrosich testified that he took him to the ground and that "a bagg[ie] popped out of his mouth." Detective Garcia testified that he saw the struggle and saw "[P]enton be took to the ground and a baggie popped out of his mouth." The transcript reflects that the baggie contained a substance which Detectives Garcia and Giadrosich believed to be crystal methamphetamine, so Detective Garcia photographed and collected the baggie.

¶8.    Detective Garcia testified that he submitted the baggie to Kristen Thibodeaux, the evidence custodian at the sheriff's office. Thibodeaux testified that she delivered the substance for testing at the Mississippi Forensics Laboratory. Velveeta Harried, a forensic scientist who was accepted as an expert in the field of drug analysis without objection, testified that she examined the substance and determined that it contained methamphetamine and weighed 2.44 grams.

¶9.    Detective Giadrosich testified that it was "not likely" that a person would purchase 2.44 grams of methamphetamine for personal use. Detective Garcia also testified that "[t]his amount of controlled substance is usually possessed with intent to distribute. It's a little bit

more than personal use."

¶10.    Detective Garcia testified that he advised Penton of his *Miranda*[3] rights at the scene; he asked Penton if he understood his rights; and Penton said that he did.  Detective Garcia also testified that based upon his training and experience, Penton was not under the influence of any drugs or alcohol when he was advised of his *Miranda* rights, and Penton did not appear to have any mental deficiencies that would prevent him from understanding them. Detective Garcia testified that Penton did not ask for a lawyer and that "[a]ll Mr. Penton stated was that he and Mr. Johnson were together when they picked up the narcotics." Detective Garcia arrested Penton.[4]

¶11.    The record reflects that Detective Garcia conducted an inventory search of the car. Detective Garcia testified that he found no additional methamphetamine, no additional baggies, and no scales during that search.  Both Detectives Garcia and Giadrosich confirmed that other than the amount of methamphetamine in the one baggie that was recovered, no other physical evidence was found during that search that would suggest an intent to distribute.    Detective Garcia testified that methamphetamine was involved in the

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] The record reflects that Detective Garcia charged both Johnson and Penton for possession of the same substance with intent to distribute. A day before trial, the State moved to sever the co-defendant, Johnson, from trial because, among other reasons, Johnson did not appear at docket call and was at large.  After a hearing on the matter, the trial court granted the State's motion.

investigation that began the day before.[5] Both Detectives Garcia and Giadrosich testified that Penton and Johnson were charged with possession-with-intent-to-distribute based on the weight of the substance, and what was learned in the two-day investigation.

¶12. Penton's counsel moved for a directed verdict at the close of the State's case, primarily based upon the lack of evidence to prove intent. The trial court denied this motion, finding that a fact question for the jury existed on this issue. The trial court then informed Penton of his right to testify on his own behalf and also informed him that if he chose not to testify, the jury would be instructed that this could not be held against him. After being given time to consult with his attorney in private, Penton did not testify,[6] and the defense did not present any other witnesses or evidence.

¶13. The court instructed the jury about possession-with-intent-to-distribute at least two grams but less than ten grams of methamphetamine and the lesser-included offense of simple

---

[5] As noted above, the trial court had granted the State's Rule 404(b) motion to refer to the narcotics investigation that had begun on December 29.

[6] The jury was instructed on this point as follows:

> As you know, William A. Penton elected not to testify at trial. A Defendant in a criminal case has a constitutional right not to testify. No presumption of guilt may be raised, and no inference of any kind may be drawn, from the fact that the Defendant did not testify. You must not consider for any purpose or in any manner in arriving at your verdict the fact that he did not testify. That fact should not enter into your deliberations or discussions in any manner, at any time.

> William A. Penton is entitled to have the jury consider all evidence presented at trial. He is presumed innocent even if he chooses not to testify.

8

possession of at least two grams but less than ten grams of methamphetamine. After

deliberations, the jury returned a verdict finding Penton guilty of simple possession. At

sentencing, the State submitted certified copies of orders of conviction and sentence for

Penton's prior convictions. The trial court found that Penton was a habitual offender under

section 99-19-81 and sentenced him to serve eight years in the custody of MDOC.

## STANDARD OF REVIEW

¶14.    In *Lindsey v. State*, 939 So. 2d 743, 748 (¶18) (Miss. 2005), the Mississippi Supreme

Court established a procedure "to govern cases where appellate counsel represents an

indigent criminal defendant and does not believe his or her client's case presents any

arguable issues on appeal." *Thomas v. State*, 247 So. 3d 1252, 1256 (¶9) (Miss. 2018)

(internal quotation mark omitted). In particular, *Lindsey* requires:

> (1) Counsel must file and serve a brief in compliance with Mississippi Rule of
> Appellate Procedure 28(a)(1)-(5), (8);
>
> (2) As a part of the brief filed in compliance with Rule 28, counsel must certify
> that there are no arguable issues supporting the client's appeal, and he or she
> has reached this conclusion after scouring the record thoroughly, specifically
> examining: (a) the reason for the arrest and the circumstances surrounding
> arrest; (b) any possible violations of the client's right to counsel; (c) the entire
> trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial
> misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into
> evidence or not; and (h) possible misapplication of the law in sentencing.
>
> (3) Counsel must then send a copy of the appellate brief to the defendant,
> inform the client that counsel could find no arguable issues in the record, and
> advise the client of his or her right to file a pro se brief.
>
> (4) Should the defendant then raise any arguable issue or should the appellate
> court discover any arguable issue in its review of the record, the court must,

9

if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant's success on appeal.

(5) Once briefing is complete, the appellate court must consider the case on its merits and render a decision.

*Thomas*, 246 So. 3d at 927 (¶12). Upon review, we find that Penton's appellate counsel fully complied with *Lindsey*. Penton has filed a pro se supplemental brief. We address it below.

## DISCUSSION

¶15. In his pro se supplemental brief, Penton sets forth his description of what happened when he and Johnson were pulled over on December 30, 2015. Penton asserts that one of the officers told him "that they did not need a reason for pulling us [Penton and Johnson] over," and "[a]t no time were we [Penton or Johnson] asked if [the officers] could search my car." Penton also asserts that one of the officers "claim[ed] to have found a bag of dope [on the ground and] . . . ask[ed] [Penton] whose bag of dope it was." According to Penton, he told the officer that he and Johnson "did not have any dope." Penton also asserts that "[a]t no point was I read my rights." Penton claims that he "told all of this [information] to [his] 'Public Defender' but he chose not to do anything with it." No testimony or evidence in the trial record supported these assertions and Penton did not set forth any assignments of error or state any basis for reversing his conviction and sentence relating to his assertions. To the extent that he may have been attempting to assert ineffective assistance of counsel, he did not cite any authority whatsoever in support of such a claim.

¶16. "As part of the *Lindsey* procedure, this Court must determine, based on a review of

10

the record and any pro se brief filed, whether any arguable issue exists." *Thomas*, 247 So. 3d at 1258 (¶16). After a thorough review of Penton's supplemental pro se brief and the record, including the indictment, all pretrial and post-trial motions and orders, the jury instructions, the trial transcript, and the trial exhibits, we find that no arguable issues exist warranting appellate review.

¶17. The Mississippi appellate courts "will not consider matters that do not appear in the record, and [they] must confine [their] review to what appears in the record." *Pulphus v. State*, 782 So. 2d 1220, 1224 (¶15) (Miss. 2001). As the Mississippi Supreme Court has long-recognized, "we cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Robinson v. State*, 662 So. 2d 1100, 1104 (Miss. 1995). In this case, Penton's brief describes events unsupported by the record—the circumstances he describes were never presented in testimony or in any other manner. Even if this were not the case, Penton also does not assert any argument supported by authority upon which reversal could be based. Without furnishing any "meaningful argument" on any grounds, Penton has waived any issue he could have raised on direct appeal. *Randolph v. State*, 852 So. 2d 547, 557-58 (¶¶28-30) (Miss. 2002); *see also Doss v. State*, 956 So. 2d 1100, 1102 (¶7) (Miss. Ct. App. 2007).

¶18. In short, we find that neither the record nor Penton's supplemental pro se brief raises any arguable issues for appeal. We therefore affirm Penton's conviction and sentence, *Thomas*, 247 So. 3d at 1258 (¶¶16-17), without prejudice to Penton's right to seek relief in

11

a properly filed petition for post-conviction relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015) (providing that when the petitioner's conviction and sentence have been affirmed on direct appeal, the petitioner must obtain leave of the Mississippi Supreme Court before filing a petition for post-conviction relief in the circuit court).

¶19.    **AFFIRMED.**

      **BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**