# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00779-COA

**CHARLES McKNIGHT**                                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2024 |
| TRIAL JUDGE | HON. DEBRA W. BLACKWELL |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | TIM COTTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/18/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     On February 9, 2024, an Adams County jury found Charles McKnight guilty of possession of a weapon by a felon as a habitual offender. The circuit court sentenced McKnight to serve ten years in the custody of the Mississippi Department of Corrections pursuant to Mississippi Code Annotated sections 97-37-5 (Rev. 2014) and 99-19-81 (Rev. 2015).[1] McKnight now appeals his conviction and sentence. Finding no error, we affirm.

---

[1] McKnight was originally charged with three counts. According to the grand jury indictment, McKnight was charged with kidnapping (Count I), rape (Count II), and possession of a weapon by a felon (Count III). The indictment also included two enhancements: (1) non-violent habitual offender and (2) displaying of a firearm. However, before trial, the court granted the State's motion to nolle prosequi Counts I and II and

## FACTS AND PROCEDURAL HISTORY

¶2.     On the afternoon of November 14, 2019, officers executed a search warrant at 500 West Stiers Lane. Upon arrival, Officers saw a brick home with a white camper trailer, also known as a fifth-wheel, parked behind it. The trailer compromised a relatively confined area, at most 39-feet long, and included a bedroom, living room, and kitchen area. The record shows that Charles McKnight, according to his testimony, lived in the house with his mother, who was suffering from a terminal illness. He would also stay and entertain in the trailer behind his mother's house. Upon execution of the search warrant, several officers from the Natchez Police Department and the Adams County Sheriff's Office surrounded the trailer. Lieutenant Kenneth Stampley and Lieutenant Lee Best approached the trailer and knocked on its side. A male (later identified as Charles McKnight) answered the door and was handcuffed and placed in a patrol car. He was followed by an unnamed woman who was taken and placed into a separate patrol car, and she was immediately taken to the hospital. Once McKnight and the woman were taken to separate patrol cars, Detective Gerald Mooney and Investigator Joe Belling secured the trailer and began searching the trailer. Upon entry, Mooney and Belling found two firearms: a .22-caliber rifle and a .38-caliber Smith & Wesson handgun, ammunition, and a letter addressed to McKnight at 500 West Stiers Lane.

¶3.     During McKnight's trial, the State called four witnesses: Lieutenant Lee Best with Adams County Sheriff's Office, Natchez Police Department Lieutenant Kenneth Stampley, Natchez Police Department Detective Gerald Mooney, and Natchez Police Department

proceeded with the trial on Count III.

2

Crime Scene Investigator Joe Belling. McKnight testified in his own defense. The State first called Lieutenants Best and Stampley to testify. They both testified they were present for the warrant's execution, but neither entered the trailer.

¶4. Retired Detective Gerald Mooney, who served as a detective with the Natchez Police Department during the initial investigation, was then called by the State to testify. Mooney testified that when he arrived around 3:00 p.m., officers from the Adams County Sheriff's Office and the Natchez Police Department were already present. After McKnight entered the trailer and was secured by police, Investigator Belling and Detective Vince Bates began to search the trailer. Mooney surveyed the trailer, locating the bedroom, living room, and kitchen area. When he entered the kitchen area, he immediately saw a .22-caliber rifle leaning against the wall in plain view. Mooney also testified that he found another firearm located in the bedroom. The second firearm, identified as a .38-caliber Smith & Wesson, was found inside a hamper underneath dirty clothes. He also found loose ammunition for the Smith & Wesson in a bag within arm's reach from where the gun was located. Lastly, Mooney testified that he also found mail addressed to McKnight in the bedroom on a small shelf, which led him to believe that McKnight lived in the trailer. The mail was addressed to McKnight with 500 West Stiers Lane as the address. Additionally, law enforcement did not test for fingerprints on the guns that were found.

¶5. The last witness presented by the State was Investigator Belling, who served as a crime scene investigator with the Natchez Police Department. Belling testified that upon arrival at the scene, he observed officers surrounding the travel trailer. Belling testified to

3

immediately seeing a .22-caliber rifle in the kitchen area leaning up against the wall. Belling also testified that he saw and took pictures of several rounds of live ammunition located in the bedroom and a second weapon in a mesh bag underneath a pile of dirty male clothing located in a clothing hamper in the bedroom.

¶6. Additionally, Belling confirmed that officers found a letter addressed to Charles McKnight at 500 West Stiers Lane from the Mississippi Department of Revenue. He collected the guns found and transported and logged them at the station. To his knowledge, the guns were not tested for fingerprints. Further, Belling stated that he was unaware whether anyone else had been in the trailer within the last 24 hours. He testified that he believed McKnight and the woman lived in the trailer together and that the guns belonged to McKnight.

¶7. Finally, McKnight testified that he lived at 500 West Stiers Lane with his mother and one of his sister's kids. McKnight explained that he had been living in the house with his mother, taking care of her until she passed away. McKnight stated that the trailer had been parked behind his mother's home for about a year. He explained that the trailer and its contents belonged to his nephew, Derrick "Terry" Grennell, a construction worker in Minnesota. Grennell had previously bought some land in Prentiss and was preparing to build a house on the land. In response to how often he was in the trailer, McKnight stated he would go back and forth to "keep from being around his mama."

¶8. According to McKnight's testimony, he often brought his mail from his mother's mailbox to the trailer and was not surprised that officers found a letter addressed to him

4

during their search. He stated that multiple people had access to the trailer and would come back and forth playing dominoes, cards, or watching TV. McKnight explained that his girlfriend and visitors would clean up after themselves when they used the trailer, and she said that if he had found the ammunition, he would have disposed of it. When asked about the firearms, he stated that he "don't know nothing about no guns" and that he had never seen them before. McKnight contended that he never searched the trailer, so he was unaware that the firearms were there. Further, he asserted that as a felon, he knew he was not allowed to be around firearms, and as someone who had been previously shot, he said he had no desire to be around firearms.

¶9. On the day of his arrest, McKnight testified that he was asleep in the bedroom in the trailer when he heard officers knock and tell him to come out with his hands raised. McKnight walked through the trailer and passed the kitchen area. He said that when he opened the door, he was immediately grabbed and put in the back of a patrol car. McKnight testified that the next day, he was informed that he was facing gun-possession charges. He told officers that he had no knowledge of any guns in the trailer, had never seen them, and did not know whose they were or where in the trailer they had been found.

¶10. Following McKnight's testimony, the defense renewed his motion for a directed verdict. However, the court again found that sufficient evidence had been presented for a reasonable jury to find McKnight guilty and subsequently denied the motion. While going over the jury instructions, the State objected to defense instruction D-2. The State argued that the proposed instructions misstated the law by requiring the State to prove that McKnight had

5

ownership or was in exclusive possession of the firearms found. The jury instruction stated:

> CHARLES [McKNIGHT] has been accused of possession of a firearm by a convicted felon. If you find from the evidence that CHARLES [McKNIGHT] was not the owner of the premises located at 500 West Stiers Lane, Natchez, Mississippi, and was not in exclusive possession of the premises, then the law requires in cases where the Defendant, in this case Charles [McKnight], is not the owner of the premises or in exclusive possession of the premises, that the state must prove beyond a reasonable doubt some competent evidence connecting him with the firearm before he can be found GUILTY of possession of a firearm by a convicted felon.

¶11. The State objected to the instruction, arguing that it was confusing, duplicative of the Court's instructions, and a misstatement of law. Prior to introducing D-2, the State proposed instruction S-5, which stated:

> Possession, as that term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object, either directly or through another person.

The State clarified that McKnight's proposed jury instruction required McKnight to have ownership or be in exclusive control of the premises to be found in possession of the firearm. However, the relevant statute does not include ownership as a requirement. As a result, by introducing ownership as a requirement, McKnight was misstating the law, which would likely confuse the jury. McKnight agreed to withdraw 'ownership' from the jury instruction; however, the court ultimately found the instruction was still an incorrect statement of law. Accordingly, the court refused the instruction, determining that the jury instruction was misleading and an incorrect statement of law because the State's burden was to show

6

McKnight had dominion or constructive possession, not ownership or exclusive control. McKnight was ultimately convicted of possession of a weapon by a felon as a habitual offender and sentenced to serve ten years in MDOC's custody pursuant to section 99-19-81. McKnight moved for a judgment notwithstanding the verdict or new trial or judgment as a matter of law, which was later denied. He now appeals.

## STANDARD OF REVIEW

¶12.   "Jury instructions are generally within the discretion of the trial court, and the settled standard of review is abuse of discretion." *Johnson v. State*, 252 So. 3d 597, 599 (¶8) (Miss. Ct. App. 2017) (quoting *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016)).  This Court reviews jury instructions as a whole and will not reverse the trial court when the jury instructions are "taken as a whole, fairly—although not perfect—announce the applicable primary rules of law." *Id.* (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)).

## DISCUSSION

¶13.   On appeal, McKnight contends that the circuit court erred by refusing his proposed jury instruction D-2. The State argues that McKnight's instruction was flawed because it used the wrong legal standard and was duplicative of the court's instruction.

¶14.   Again, we review a court's decision for abuse of discretion. *Johnson v. State*, 252 So. 3d 597, 599 (¶8) (Miss. Ct. App. 2017); *see Robinson v. State*, 324 So. 3d 1137, 1143 (¶19) (Miss. Ct. App. 2021). A defendant may propose jury instructions even if the evidence that supports them is "weak, inconsistent, or of doubtful credibility." *Ellis v. State*, 778 So. 2d 144, 118 (¶15) (Miss. 2000); *see Banyard v. State*, 47 So. 3d 676, 683 (¶18) (Miss. 2010)

(holding although the evidence was inconsistent, "the merits of Banyard's duress claim are for a properly instructed jury to weigh"). However, "the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions or is without foundation in the evidence." *Cruz v. State*, 305 So. 3d 149, 156 (¶15) (Miss. Ct. App. 2020) (quoting *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009)). As a result, when reviewing the giving or refusal of jury instructions, "we do not read the jury instructions in isolation," but instead we consider them "as a whole." *Rushing v. State*, 911 So. 2d 526, 537 (¶24) (Miss. 2005).

¶15.    In support of his proposed jury instruction D-2, McKnight argued that exclusivity and ownership were required to prove possession. The trial court refused the instruction, though, stating that it misrepresented the law and would likely confuse the jury.[2]

¶16.    After reviewing the jury instructions given as a whole, we find that the jury instruction the State proposed sufficiently conveyed the law regarding possession and that McKnight's instruction misstated the law. The trial court explained the definition of possession was already covered in the instructions. There was sufficient information within the instruction for the jury to understand the law and requirements for possession, and we find no reversible error.

¶17.    McKnight's proposed instructions misstated the law by adding exclusivity and

---

[2] Mississippi Code Annotated section 97-37-5(1) states, "It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm . . . or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section."

8

ownership as requirements. *See McGlothin v. State*, 238 So. 3d 1, 4 (¶14) (Miss. Ct. App. 2017) (citing *Davis v. State*, 199 So. 3d 701, 703 (¶9) (Miss. Ct. App. 2016) ("Constructive possession may be shown by establishing that the [item] involved was subject to [the defendant's] dominion or control."); *see also Jordan v. State*, 158 So. 3d 348, 351 (¶8) (Miss. Ct. App. 2014) (citing *Ferrell v. State*, 649 So. 2d 831, 834 (Miss. 1995) (holding "[w]hen the defendant owns or controls the premises where the contraband is found, there is a presumption of constructive possession of the contraband") (emphasis omitted); *see also Hamburg v. State*, 248 So. 2d 430, 432 (Miss. 1971)). Therefore, the trial court did not err in refusing jury instruction D-2.

## CONCLUSION

¶18. We conclude that the trial court did not abuse its discretion by refusing to give McKnight's proposed jury instruction D-2, as it was an inaccurate statement of the law, or by denying McKnight a new trial. Accordingly, we affirm the judgment of conviction and sentencing.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**